IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| KEVIN KELLY JOE BATES, Institutional ID No. 155577, | § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 5:22-CV-102-BQ |
| v. | § § | |
| SHERIFF KELLY ROWE, *et al.*, | § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND**
**RECOMMENDATION AND ORDER OF TRANSFER**

The Honorable James Wesley Hendrix, United States District Judge, transferred this case to the undersigned United States Magistrate Judge by order dated June 6, 2022. ECF No. 6. In accordance with the order's directive, the undersigned conducted preliminary screening as described in 28 U.S.C. §§ 1915(e)(2) and 1915A(b) and determined that pro se Plaintiff Kevin Kelly Joe Bates's claim against Defendant Davian Moore in his individual capacity for excessive force, as well as Bates's bystander liability claims against Defendants Martin Rosas and Jeremy Tidwell in their individual capacities, survive preliminary screening.[1] ECF No. 25. Consequently, the Court entered an order requiring Defendants to answer or otherwise plead to Bates's claims. *Id.* Defendants timely filed Answers. ECF Nos. 32, 33, 34. As of today's date, not all parties have consented to jurisdiction by the magistrate judge. Upon review of Defendants' Answers, it is the opinion of the undersigned that this matter must be transferred to the district judge for further proceedings.

---

[1] The Court identifies Defendants by the names reflected in their Answers. *See* ECF Nos. 32, 33, 34.

## I. Discussion

The undersigned previously found that Bates's claims for excessive force and bystander liability against Defendants in their individual capacities survive preliminary screening.[2] *See* ECF No. 25, at 16–23. The Court addresses these claims below.

### A. Excessive Force

Bates's use of force claim arises under the Fourteenth Amendment because he allegedly sustained injuries while detained at Lubbock County Detention Center (LCDC). *See* Compl. 5, ECF No. 1;[3] *see also Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015) (abrogating lower courts' application of Eighth Amendment excessive force standards in *Hudson v. McMillian*, 503 U.S. 1 (1992) to pretrial detainees). To sufficiently state an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396–97. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The reasonableness of the force used must be assessed "from the perspective and with the knowledge of the defendant officer" and with "deference to policies and practices needed to maintain order and institutional security." *Id.* at 399–400. In determining the objective reasonableness of an officer's use of force, a court should consider the following non-exclusive factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the

---

[2] The Court concluded that all of Bates's other 42 U.S.C. § 1983 claims failed to state a claim for relief and dismissed them through the same order. *See* ECF Nos. 25, 27.

[3] Page citations to Bates's Complaint refer to the electronic page number assigned by the Court's electronic filing system.

amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id.* at 397.

The authenticated records and camera footage reflect that on April 20, 2022, Bates learned from LCDC officers that he would be receiving a disciplinary charge for earlier misconduct. Tr. 3:19–4:4, 5:8–:18, ECF No. 31. The authenticated records indicate that he became upset upon hearing this information. Bates contends, however, that he was never angry or aggressive. Tr. 5:8–6:5. Regardless, Bates refused to return to his cell as directed by officers. Tr. 5:23–6:5; *see* Kulka BWC I 0:00–:09.[4] Officers subsequently used force to gain Bates's compliance and eventually handcuffed him. *See* ECF No. 25, at 3–6.[5]

Bates avers that *after* he was cuffed and subdued, Defendant Moore pushed his knee into Bates's head, grinding it into the concrete floor. Compl. 6; Tr. 15:9–:20, 16:19–:23, 17:2–:5.[6] As a result of the use of force, Bates asserts he suffered pain and swelling in his face and neck that lasted approximately one week. Tr. 19:25–20:5, 27:8–:17.

As noted by the Court in its previous order, the videos capture snippets of Defendant Moore's actions, but they are of insufficient clarity and duration to clearly refute a claim of excessive force. Because of the fact-intensive nature of the inquiry, the Court cannot conclude at

---

[4] "BWC" stands for body-worn camera. There are two different body-camera files attributed to "Kulka." Citations to "Kulka BWC I" refer to the file ending in -3306 and citations to "Kulka BWC II" refer to the file ending -3307. Based on the perspective of the Kulka BWCs, the Court believes Officer Garza was the individual wearing that body camera.

[5] In its prior order, the Court thoroughly reviewed Bates's contentions along with video and audio evidence in the authenticated records and reconstructed Bates's factual assertions to create a timeline reflecting his allegations *except* where clearly contradicted by video or audio evidence. ECF No. 25, at 3–7. Here, the Court focuses only on the allegations relevant to Bates's live claims.

[6] While Defendant Moore's knee is immediately next to Bates's head during the confrontation, the video never shows Moore placing his knee on top of Bates's head or grinding it into the concrete. *See* Facility 3:50–5:05; Kulka BWC II 2:40–6:30; Johnson BWC 0:00–3:40; Lara BWC 2:40–3:20. But Moore does place his hand on Bates's neck for approximately thirty seconds *after* Officer Lara secured the handcuffs. *See* Lara BWC 2:16–2:56; Kulka BWC II 1:51–2:31. Bates's head is turned to the left and he does not, or is unable to, move his head during this time, although he can be heard giving audible responses to comments/questions by the officers. Lara BWC 2:16–2:56; Kulka BWC II 1:51–2:31.

screening, as a matter of law, that the force applied by Defendant Moore was reasonable under the circumstances.

Specifically turning to the *Kingsley* factors, Bates alleges that: he did not present *any* threat to the officers, including Defendant Moore; the purported force was excessive to the need; and Defendant Moore did not temper his use of force. *See* Compl. 6; Tr. 15:9–:20, 16:19–:23, 17:2–:5. As a result, the first, third, fourth, fifth, and sixth *Kingsley* factors (i.e., the relationship between the need for the use of force and the amount of force used, any effort made by the officer to temper or limit the amount of force, the threat to institutional order reasonably perceived by the officer, the severity of the security problem at issue, and plaintiff's active resistance) weigh in Bates's favor at this stage.

In contrast, the second *Kingsley* factor (i.e., the extent of plaintiff's injury) heavily weighs in Defendant Moore's favor. According to Bates, he suffered pain and swelling in his face and neck that lasted approximately one week, for which he did not seek medical care other than asking for pain reliever. *See* Tr. 19:25–20:5, 23:8–27:25. Bates's injuries, if any, are undeniably minor. On balance, however, weighing Defendant Moore's alleged actions—gratuitous force used on a handcuffed and no-longer-resisting detainee lying face down on the ground—the Court finds that, for screening purposes, Bates has pleaded adequate facts plausibly stating a claim "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396–97; *see Preston v. Hicks*, 721 F. App'x 342, 345 (5th Cir. 2018) (per curiam) (stating in the Eighth Amendment context that "[o]nce a prisoner has been subdued, using gratuitous force on him is unreasonable").

In sum, the Court finds Bates's factual assertions state a claim sufficient to survive preliminary screening, i.e., a Fourteenth Amendment excessive force claim against Defendant

Moore. *See, e.g.*, *Tucker v. City of Shreveport*, 998 F.3d 165, 181–82 (5th Cir. 2021) ("[A] use of force that may begin as reasonably necessary in order to obtain compliance may cease to be so as a suspect becomes more compliant."); *Quintanilla v. Araiza*, No. SA-20-CV-00927-XR, 2021 WL 2019204, at *6–7 (W.D. Tex. May 20, 2021) (denying defendants' motion to dismiss detainee's excessive force claim despite minimal injury, where detainee plausibly alleged that defendants gratuitously used force on "a handcuffed and unresisting detainee during an escort inside the jail that resulted in injuries"); *Luke v. Beagron*, No. 16-13461, 2016 WL 8740486, at *12–13 (E.D. La. Dec. 28, 2016) (recommending pretrial detainee's excessive force claim proceed beyond preliminary screening where detainee suffered a pinched nerve as a result and he alleged he did not resist—"[i]f [his] version of events is accurate, it appears that no use of force was in fact necessary"), *R. & R. adopted by* 2017 WL 1407719 (E.D. La. Apr. 20, 2017); *Walker v. Jefferson Par. Sheriff Newell Norman*, No. 16-2890, 2016 WL 6609170, at *3–4 (E.D. La. Oct. 17, 2016) (recommending detainee's excessive force claim proceed where detainee claimed that defendants' actions caused him back, wrist, and neck pain and court could not, at screening stage, determine "whether the force used by the defendants . . . was objectively reasonable or necessary under the circumstances"), *R. & R. adopted* by 2016 WL 6603180 (E.D. La. Nov. 8, 2016); *see also Petta v. Rivera*, 143 F.3d 895, 902 (5th Cir. 1998) (per curiam) (explaining within the context of a Fourteenth Amendment substantive due process analysis, "the extent of injury is only one relevant factor and cannot be exclusively determinative" (citation omitted)); *Williams v. City of Houston*, No. H-16-3342, 2019 WL 2435854, at *10 (S.D. Tex. June 11, 2019) (denying officer's summary judgment motion where although "summary judgment evidence show[ed] that [detainee] had earlier resisted arrest and [a] blood test, that resistance could not justify [officer's] later use of

force if resistance had ceased," and thus determining there remained a factual dispute as to "whether the force used was reasonably necessary to restrain [detainee]").

### B. Bystander Liability

Bates also maintains that during the use of force, Defendants Tidwell and Rosas were present. Tr. 17:6–19:4. Bates contends that Defendants could have prevented the purportedly unconstitutional act of Defendant Moore. Compl. 3–4, 6–7; Tr. 17:6–19:4.

An official's failure to intervene in another's use of excessive force against an arrestee may violate the Constitution and subject the official to § 1983 liability. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). To prevail on a bystander liability claim, a plaintiff must establish that an officer: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017) (citation omitted).

The Court similarly accepts Bates's allegations as true, as it must at this stage of the proceedings, and concludes they state a claim sufficient to survive preliminary screening, i.e., claims for bystander liability against Defendants Tidwell and Rosas. *See, e.g., Greene v. DeMoss*, No. 3:20-CV-00578, 2020 WL 7755690, at *8–9 (W.D. La. Dec. 11, 2020) (finding defendants were not entitled to qualified immunity on plaintiff's bystander liability claims, where plaintiff alleged that each defendant used unconstitutional force and was therefore "necessarily . . . close enough to [plaintiff] that [each] could have opted to cease harming [plaintiff]," but instead watched the other defendants use force "without intervening"), *R. & R. adopted by* 2020 WL 7755655 (W.D. La. Dec. 29, 2020), *aff'd*, No. 21-30044, 2022 WL 3716201 (5th Cir. Aug. 29, 2022).

## II. Recommendation

Given the timeframe set forth by the district judge in the referral order, it appears prudent to transfer the case back to the district judge for implementation of a scheduling order. Because Defendants have asserted the affirmative defense of qualified immunity, it is the undersigned's **RECOMMENDATION** that the United States District Judge enter a limited scheduling order, requiring Defendants to file a dispositive motion for the purpose of making a preliminary determination on qualified immunity. *See* ECF No. 32, at 1–2 (raising several defenses, including qualified immunity); ECF No. 33, at 1–2 (same); ECF No. 34, at 1–2 (same). Alternatively, the undersigned recommends that a Rule 16 scheduling order be entered, setting dates certain for pretrial deadlines and filing dispositive motions.

It is therefore **ORDERED** that the transfer of this case to the United States Magistrate Judge is terminated and the case is hereby transferred back to the docket of the United States District Judge. This case shall hereinafter be designated as Civil Action Number 5:22-CV-102-H.

## III. Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual

findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: March 28, 2023.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE