UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| KEVIN KELLY JOE BATES, Institutional ID No. 02442793<br><br>Plaintiff,<br><br>v.<br><br>SGT. JEREMY TIDWELL, *et al.*,<br><br>Defendants. | No. 5:22-CV-00102-H |

## OPINION AND ORDER

In this 42 U.S.C. § 1983 civil-rights action, Plaintiff Kevin Kelly Joe Bates complains about a use-of-force incident that occurred while he was a pretrial detainee in the Lubbock County Detention Center (LCDC). Proceeding pro se and *in forma pauperis*, Bates seeks to recover monetary damages from three LCDC officers involved in the incident—Davian Moore, Jeremy Tidwell, and Martin Rosas. Defendants filed a motion for summary judgment on the ground that they are entitled to qualified immunity. Bates filed a response, and Defendants filed a reply. As explained below, the Court grants Defendants' motion.

1.  **Background**[1]

On April 20, 2022 at 12:20 a.m., LCDC Officer Roxann Mitchell observed Bates masturbating in his cell, which is located in a pod unit that houses inmates who have a history of disciplinary issues and pose a risk of violence. When Bates ignored Mitchell's

---

[1] The following facts are undisputed and gleaned from the exhibits offered by Defendants in support of their motion, including video recordings of the incident, Bates's verified complaint, and his sworn testimony at a *Spears* hearing. Dkt. Nos. 1, 31, 58, 59; *see Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985). Bates does not present any evidence in response to Defendants' motion.

directive to stop, she told him that he would receive a disciplinary charge. Approximately one hour later, the incident giving rise to this lawsuit occurred.

Around 1:20 a.m., Bates left his cell to take a shower. He approached the officer station where he asked for shaving clippers. His request was denied, and Officer Thompson informed Bates that he was receiving an additional disciplinary charge for intentionally masturbating in front of a female officer. Bates became angry and began to curse at and argue with officers at the station. Officer Thompson directed Bates to return to his cell, but he refused. The Detention Response Team (DRT) was called to "deescalate and assist with the situation." DRT Officers Jeremiah Garza and Rojelio Lara tried to calm Bates down and convince him to return to his cell voluntarily. When Bates refused, Garza and Lara each grabbed one of Bates's arms and escorted him to his cell. While doing so, Bates became verbally and physically combative and refused to comply with their instructions to place his arms behind his back. A physical struggle ensued, which prompted Garza and Lara to try and subdue him. Bates resisted their efforts, so Officer Garza tased him. Bates fell to his knees but tried to get back up. Officer Garza instructed Bates to stop resisting and place his arms behind his back, but Bates refused. Garza tased him a second time, causing Bates to fall to the ground in a prone position. Once there, Bates continued to resist and held his arms below his body.

To assist Garza and Lara in removing Bates's arms out from under his body so that he could be handcuffed, and to otherwise control Bates's physical resistance, Officer Davian Moore placed his hands on Bates's neck and upper back. Bates continued to resist, so Garza tased Bates a third time to gain compliance. After Bates was handcuffed, Moore left

his hand on Bates's neck for approximately 30 seconds.[2]  Once the situation was under control, Bates was escorted back to his cell in the "Uncooperative Carry Position," *i.e.*, still handcuffed and in a prone position.  Bates claims that Moore's actions caused him to sustain swelling in his face and neck that lasted approximately one week.

There are only three live claims pending before the Court.[3]  Bates alleges that (1) Moore used excessive force against him after he was handcuffed, and (2) Sergeant Jeremy Tidwell and Corporal Martin Rosas, who were unit supervisors and present during the incident, are liable as bystanders for Moore's unlawful conduct.

**2.    Legal Standards**

    **A.    Summary Judgment**

A party is entitled to summary judgment if it can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)); *see* Fed. R. Civ. P. 56(c).  Once a movant who does not have the burden of proof at trial makes a properly supported motion, the burden shifts to the nonmovant to show that a summary judgment should not be granted.  *Ragas*, 136 F.3d at

---

[2] Bates alleges that, after he was handcuffed, Moore placed his knee on Bates's head and neck and was grinding his head into the concrete. Dkt. No. 31 at 15–16.  But Bates's allegations are wholly contradicted by the five video recordings of the incident, which the Court has thoroughly reviewed.  Although Moore's knee is near Bates's head, Moore at no time places his knee on Bates's neck or head.  Dkt. Nos. 58, 59 (DX A-5 through A-9, which are contained on a thumb drive).  As explained further below, under these circumstances, the Court may not accept Bates's factual allegations as true for purposes of ruling on a motion for summary judgment.  Moreover, as noted by Defendants, Judge Bryant made the same finding in his March 28, 2023 Findings, Conclusions, and Recommendation and Order of Transfer, to which Bates never filed objections.  Dkt. No 36 at 3.  The Court accepted Judge Bryant's finding and conclusions on June 27, 2023.  Dkt. No. 49.

[3] Several of Bates's original claims—including excessive-force claims against Garza and Lara—were dismissed during judicial screening.  *See* Dkt. Nos. 25 & 27.

458 (citations omitted). A party opposing summary judgment may not rest upon mere allegations contained in the pleadings but must set forth and support by summary-judgment evidence specific facts showing the existence of a genuine issue for trial. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57 (1986)). However, factual allegations made in verified pleadings and *Spears* hearing testimony given under penalty of perjury serve as competent summary-judgment evidence. *See Hart v. Harrison*, 343 F.3d 762, 765 (5th Cir. 2003); *Grimon v. Collins*, 30 F.3d 1491 (5th Cir. 1994).

When ruling on a motion for summary judgment, courts "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Bagley v. Guillen*, 90 F.4th 799, 802 (5th Cir. 2024) (quoting *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009)). However, factual allegations arising out of events captured on video are viewed "in the light depicted by the videotape." *Bagley*, 90 F.4th at 802 (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)). "When opposing parties tell two different stores, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment." *Id.*

Unsubstantiated assertions are not competent summary judgment evidence. *Ragas*, 136 F.3d at 458 (citation omitted). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim. *Id.* Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. *Id.* at 459 (citation omitted).

### B.     42 U.S.C. § 1983 & Qualified Immunity

Section 1983 "provides a claim against anyone who 'under color of any ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). "A plaintiff makes out a [Section] 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293–94 (5th Cir. 2019) (quoting *Brown v. Miller*, 519 F.3d 23, 236 (5th Cir. 2008)).

However, even if a plaintiff can show that a defendant violated his or her constitutional rights, the defendant is not necessarily liable for his actions under Section 1983. Defendants who perform discretionary duties may invoke the affirmative defense of qualified immunity in response to a plaintiff's Section 1983 suit. The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (citations omitted). It protects all but the plainly incompetent or those who knowingly violate the law. *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020) (citations omitted).

Courts undertake a two-pronged analysis to determine whether a public official is entitled to qualified immunity, inquiring: (1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged conduct. *Guerra*, 82 F.4th at 285 (citations omitted). Courts exercise their discretion in deciding which of the two prongs of the qualified-immunity analysis should be addressed first. *Id.*

When an official raises qualified immunity on summary judgment, the usual summary-judgment burden is altered and shifts to the plaintiff, who must show that the defense does not apply. *See Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 329–30 (5th Cir. 2020) (citations omitted); *see also Castloo*, 983 F.3d at 191 (citing *Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020)). Specifically, the plaintiff must show that (1) there is a genuine dispute of material fact and that a jury could return a verdict entitling him to relief for a constitutional injury; and (2) his version of those disputed facts constitutes a violation of clearly established law. *Bartlett*, 981 F.3d at 330.

The "clearly established" prong is difficult to satisfy. The Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality. *Castloo*, 983 F.3d at 191 (citing *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). A clearly established right is one that is clear enough that every reasonable officer would have understood that what he is doing violates that right. *Id.* This inquiry must be undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.*

There are two ways for a plaintiff to demonstrate that a defendant's conduct violated clearly established law. *See Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021). Under the first, more typical approach, the plaintiff must "identify a case" or "body of relevant case law" in which "an officer acting under similar circumstances … was held to have violated the [Constitution]." *Id.* (citing *Bartlett*, 981 F.3d at 330). While there need not be a case directly on point, the unlawfulness of the challenged conduct must be beyond debate. *Id.* Under the second approach, there can be the rare "obvious case," where the unlawfulness of the officer's conduct is so egregious that it is sufficiently clear even though existing precedent does not address similar factual circumstances. *See Doege*, 994 F.3d at 726 (citing

6

*Dist. of Columbia v. Wesby*, 538 U.S. 48, 65 (2018)); *see also Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

"In determining what constitutes clearly established law, [the Fifth Circuit] looks to Supreme Court precedent and then to [its] own." *Hicks v. LeBlanc*, 81 F.4th 497, 503 (5th Cir. 2023) (quoting *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018)). When there is no direct controlling authority, "[the Fifth Circuit] may rely on decisions from other circuits to the extent that they constitute robust consensus of cases of persuasive authority." *Id.*

  C. **Excessive Force**

Force against a pretrial detainee is "excessive" and a violation of the Fourteenth Amendment when the force was objectively unreasonable. *Fairchild v. Coryell Cnty., Tex.*, 40 F.4th 359, 362–63 (5th Cir. 2022) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97)). Objective reasonableness turns on the facts and circumstances of each particular case. *Kingsley*, 576 U.S. at 397 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Assessments of the reasonableness of force must be made from the perspective of the jailer who is often forced to make split-second decisions in tense situations. *Fairchild*, 40 F.4th at 263 (citations omitted). The reasonableness of the force must be assessed from the perspective and with the knowledge of the defendant officer and with deference to policies and practices needed to maintain order and institutional security. *See Kingsley*, 576 U.S. 399–400. A pretrial detainee can prevail only if he shows that the defendant applied force in a manner that was not rationally related to a legitimate nonpunitive governmental purpose, or that the actions were excessive in relation to that purpose. *Id.* at 398.

7

The following non-exclusive factors bear on the reasonableness inquiry: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Fairchild*, 40 F.4th at 363 (citing *Kingsley*, 576 U.S. at 397).

### D.  Bystander Liability

The theory of bystander liability applies to Section 1983 claims for use of excessive force against a pretrial detainee. *See Kitchen v. Dallas Cnty., Tex.*, 759 F.3d 468, 480 (5th Cir. 2014). Bystander liability may be established where an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.* (quoting *Whitely v. Hanna*, 726 F.3d 631, 646–47 (5th Cir. 2013)). The Fifth Circuit has held "that officers have a reasonable opportunity to intervene if they are present at the scene and that they violate their duty to intervene if their conduct demonstrates they acquiesced to the unconstitutional conduct engaged by others." *Austin v. City of Pasadena, Tex.*, 74 F.4th 312, 331 (5th Cir. 2023) (citing *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)). Thus, it is clearly established law in the Fifth Circuit that officers have a duty to intervene, rather than to acquiesce, in the unconstitutional conduct of others. *Austin*, 74 F.4th at 331 (citation omitted). However, an officer will not be liable on a plaintiff's bystander-liability claim if the plaintiff cannot prove an underlying constitutional violation. *See Kitchen*, 759 F.3d at 480 (citations omitted); *see also Reynolds v. Wood Cnty., Tex.*, No. 22-40381, 2023 WL 3175467, at *4 (5th Cir. May 1, 2023).

3.     **Analysis**

Moore argues that he is entitled to qualified immunity because Bates cannot show that his actions were objectively unreasonable under clearly established law. Dkt. No. 57 at 29. It is unclear whether Moore intends to argue that Bates fails to satisfy the first prong of the qualified-immunity analysis, *i.e.*, whether there is a genuine issue of material fact that would allow a jury to find that he used excessive force. Out of an abundance of caution, the Court will address both prongs.

A.     **Excessive Force**

Bates alleges that Moore used excessive force against him by leaving his hand on his neck for approximately 30 seconds after he was handcuffed. Moore contends that the force he used against Bates was objectively reasonable because the *Kingsley* factors weigh in his favor. After viewing the facts and drawing all reasonable inferences in Bates's favor, the Court agrees with Moore.

i.     **The extent of Bates's injury (Factor Two)**

At the *Spears* hearing, Bates testified that Moore's use of force caused him to sustain swelling in his face and neck for approximately one week. Dkt. No. 31 at 20. Moore argues that, because such injuries are minor and arguably considered *de minimis* under the jurisprudence of this circuit, this factor weighs heavily in his favor. The Court agrees.

First, Bates does not respond to Moore's argument or point to any evidence in the record to refute it. Second, the record clearly supports Moore's contention. The video recordings show that medical personnel were called to the scene after the incident. Although Bates can be heard complaining about pain in his wrist, he does not complain about having any pain in or injuries to his neck or face. And the authenticated LCDC

9

medical records show that, on April 21, 2022, one day after the incident, Bates sought pain relief for injuries to his lower back and left wrist only. Dkt. No. 58 at 30. The Court finds this factor weighs heavily in favor of Moore.

### ii. Effort made by Moore to temper or limit the amount of force (Factor Three)

Moore argues that this factor weighs in his favor because he applied only light, downward pressure to Bates's neck and back and refrained from using more severe force. In support of his argument, Moore cites to his, Tidwell's, and Rosas's declarations made under penalty of perjury. Dkt. No. 58 at 38–52. Moore states that, after Bates had been handcuffed, he kept one hand on Bates's back and the other on his neck for less than 30 seconds. He then moved both hands to Bates's back, where he applied light pressure. Moore explains that he did so because "Bates had not complied with any of the orders given to him prior to being tased three times, and even after being handcuffed he arched his back and tried to get back up." Dkt. No. 58 at 40. Moore believed that it was necessary to keep his hand on Bates's back and neck because he perceived that, in light of Bates's repeated refusal to obey orders to stop resisting, Bates would "attempt to get away again," and he needed to ensure that he stayed down to avoid another potential security threat. *Id.* at 40–41. Moore states that the pressure he applied was light enough so Bates could breathe, talk, and move his head; he did not, at any time, hit, strike, tase, or shoot Bates. *Id.* at 41. The statements made by Tidwell and Rosas in their declarations, along with the video recordings of the incident, are factually consistent with the statements made by Moore in his declaration.

Bates does not specifically respond to Moore's argument addressing his efforts to temper the amount of force used. Rather, in his response, Bates insists that, after he had

been handcuffed and was no longer resisting, Moore placed his knee on his head and/or neck and began "grinding or smashing" his head into the ground. Dkt. No. 60. Bates refers the Court to a photo included in Defendants' brief. *Id.* at 5. The photo is a screenshot taken from one of the video recordings, DX A-7. Bates insists that it shows Moore's knee on his neck area.

Bates is incorrect. As previously noted, the Court has reviewed all five video recordings of the incident, including DX A-7. Moore does not, at any time, place his knee on Bates's head or neck. Because the video recordings contradict these specific factual allegations, the Court cannot accept Bates's version of them as true. Moreover, because Bates does not point to any evidence that refutes the officers' declarations concerning Moore's efforts to temper the amount of force used, the Court finds that this factor weighs heavily in Moore's favor.

### iii.   Severity of the security problem at issue and the threat reasonably perceived by the officer (Factors Four and Five)

Moore argues that these factors weigh in his favor because his perception that Bates posed a significant security risk to the unit was reasonable. He cites his, Tidwell's, and Rosas's declarations, along with the video recordings, to show that (1) throughout the incident, Bates continually refused to obey various officer directives even after being tased, and (2) the incident and Bates's continued resistance required seven officers to become involved, diverting their attention away from maintaining security throughout the unit. Dkt. No. 58 at 38–52; DX A-5 through A-9. When explaining why he continued to place pressure on Bates's back after he had been handcuffed, Moore explains:

> I needed to make sure that [Bates] stayed down and did not get up because I perceived that [Bates] was going to attempt to get away from officers again and I was concerned about this becoming a security

11

> threat. Bates began his resistance in an open area of the housing unit and not in his cell. His resistance caused not only two officers assigned to that housing unit to become involved but required the involvement of five other officers. This alone took resources from the monitoring and care of the other inmates in the 3-C/D posts and left the housing unit vulnerable.

Dkt. No. 58 at 41.

Tidwell, a supervisory officer, states that Bates's defiance and continued resistance, in conjunction with the amount of officer involvement needed to control the situation, created a "huge drain on resources [that] left other areas of the jail unattended and this inherently created a security threat to the facility." Dkt. No. 58 at 46. Tidwell also explains that, because Bates was aggressive and angry during the entire incident, he was concerned for officer safety. *Id.* In addition, Rosas explains that, even after Bates was handcuffed, Garza decided that it was necessary to carry Bates back to his cell because he believed that Bates would not stop resisting. Dkt. No. 58 at 51. The video footage is factually consistent with Rosas's statements.

Bates does not specifically respond to Moore's argument addressing these factors. Nor does point to any evidence in the record to refute Moore's assertion that it was reasonable for him to perceive that Bates's actions posed a significant security threat in the unit. Thus, the Court finds these factors weigh heavily in Moore's favor.

### iv. The relationship between the need for the use of force and the amount of force used and whether Bates was actively resisting (Factors One and Six)

Lastly, Moore argues that his applying light pressure to Bates's neck for approximately 30 seconds after Bates was handcuffed was necessary and reasonable under the circumstances because (1) Bates posed a heightened security risk and consistently

disobeyed officer orders throughout the incident, and (2) Bates continued to actively resist by "remaining tense and moving in a potentially dangerous manner." Dkt. No. 57 at 42.

For the same reasons stated in subsection (c), the Court finds that the first *Kingsley* factor—the relationship between the need for the use of force and the amount of force used—weighs heavily in Moore's favor. Specifically, Moore's application of force to Bates's neck was reasonable because the unrefuted evidence shows that Bates posed a security threat.

In support of his argument that Bates was actively resisting, Moore again points to his declaration. He explains that he kept his hand on Bates's neck "because [Bates] had not complied with any of the orders given to him prior to being tased three times, and even after being handcuffed he arched his back and tried to get back up." Dkt. No. 58 at 40. In response, Bates insists that the video recordings show that he did *not* resist officers after being handcuffed.

Having carefully reviewed all five video recordings, the Court finds that they do not conclusively establish whether Bates was actively resisting officers, as Moore contends, by arching his back or trying to get up, after he was handcuffed. In all the videos, Bates appears to be still and under control. Under these circumstances, the Court must take Bates's factual allegation as true and view this aspect of the video recordings in his favor. Thus, at this stage of the case, the Court cannot find that Bates was actively resisting during the 30 seconds that Moore kept his hand on Bates's neck.

However, the uncontroverted video evidence establishes that Bates actively resisted officers' attempts to restrain him for several minutes immediately before the force in question, including attempting to get up after being tased multiple times. Consequently,

Moore's brief application of light force—downward pressure for 30 seconds—as the chaotic struggle came to an end was "the sort of 'split-second judgment' in a difficult situation that qualified immunity is designed to protect." *Griggs v. Brewer*, 841 F.3d 308, 316 (5th Cir. 2016) (citing *Graham*, 490 U.S. at 396–97). And because assessments of the reasonableness of force must be made from the perspective of the jailer who is often forced to make these sorts of split-second decisions in tense situations, the Court finds Moore's short-lived, continued application of light pressure after Bates was handcuffed was not excessive in relation to his reasonable perception that Bates posed a security risk. Thus, the Court finds the sixth *Kingsley* factor weighs in Moore's favor.

Because all the *Kingsley* factors weigh in Moore's favor, the Court finds that Bates has failed to create a genuine issue of material fact as to whether Moore's use of force against him was objectively reasonable. In other words, Bates cannot show a constitutional violation and, therefore, cannot satisfy his burden to overcome the first prong of the qualified-immunity defense.

    **B.**    **Clearly Established Law**

Even if Bates had raised a genuine issue of material fact that would allow a jury to find that Moore's conduct was unconstitutional, the Court concludes that Bates cannot satisfy his burden to overcome the second prong of the qualified-immunity defense. Specifically, as noted by Moore in his reply, Bates fails to show that Moore's conduct violated law that was clearly established at the time of the incident.

It is Bates's burden to identify caselaw that put Moore on notice that his particular conduct was unlawful. Bates has not done so.[4] In turn, Bates cannot demonstrate that all reasonable officers, when faced with similar factual circumstances as those presented here, would have believed it was a violation of his constitutional rights to keep a hand placed on his neck for 30 seconds after he was handcuffed. Nor can he show that Moore's conduct was so egregious that it was clearly unlawful.

### C. Bystander Liability

Because Bates failed to meet his burden to show that Moore's use of force against him violated clearly established law, the Court, in turn, concludes that his related bystander-liability claims against Defendants Rosas and Tidwell fail as a matter of law. *See Kitchen*, 759 F.3d at 480 (citations omitted).

### 4. Conclusion

For these reasons, the Court grants Defendants' motion for summary judgment on the grounds that they are entitled to qualified immunity and dismisses Bates's claims against them with prejudice. Dkt. No. 56. Bates shall take nothing on his claims against Defendants.

---

[4] In his untimely "objection" to Defendants' motion, which was stricken by the Court (Dkt. Nos. 63, 66), Bates cites *Tucker v. City of Shreveport*, 998 F.3d 165, 181–82 (5th Cir. 2021), for the general proposition that "a use of force that may begin as reasonably necessary in order to obtain compliance may cease to be so as a suspect becomes more compliant." Dkt. No. 63 at 2. Even if the Court were to consider Bates's objection, this broad general proposition does not clearly establish that Moore's particular conduct was unlawful because the factual circumstances presented in *Tucker* are different than those presented here. *Tucker* involved a Fourth Amendment claim where the plaintiff alleged that officers forced him to the ground and beat him in order to place him in handcuffs. The plaintiff in *Tucker* did not complain that an officer placed pressure on his neck after he had been handcuffed. Moreover, the Fifth Circuit ultimately reversed the district court's conclusion that factual issues precluded dismissal of plaintiff's claims against the officers on qualified-immunity grounds.

The Court will enter judgment accordingly.

Dated March 6, 2024.

                                                  _____
                                                  James Wesley Hendrix
                                                  United States District Judge